# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **Midas Green Technologies, LLC,** | ) |
| Plaintiff, | ) |
| | ) Case No. 6:24-cv-00166 |
| - vs. – | ) |
| | ) **Jury Trial Demanded** |
| **Green Revolution Cooling, Inc.** | ) |
| Defendant. | ) |

**COMPLAINT FOR PATENT INFRINGEMENT**

1

Midas Green Technologies, LLC ("Midas" or "Plaintiff') hereby brings this action for patent infringement against Green Revolution Cooling, Inc. ("GRC" or "Defendant").

Midas alleges infringement of U.S. Patent No 10,405,457, entitled "Appliance Immersion Cooling System" (the "'457 Patent") at least by reason of Defendant's continued making, offering for sale, having made, and/or selling immersion cooling systems that infringe the Midas '457 Patent.

A true and correct copy of the '457 (the "Asserted Patent") is attached as **Exhibit A**.

### I. PARTIES

1. Plaintiff Midas Green Technologies, LLC is a Texas limited liability company with its principal place of business at 7801 N Capital of Texas Hwy # 230, Austin, TX 78731. Midas has been an innovative pioneer in the application of immersion cooling technology.

2. Defendant Green Revolution Cooling, Inc. is a Texas corporation with its principal place of business at 11525 Stonehollow Dr. Ste. A-135, Austin, TX 78758. GRC designs and builds immersion cooling systems for use in data centers including cryptocurrency mining facilities.

### II. JURISDICTION

3. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 et seq. The Court therefore has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a)

4. Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to constitutional due process and the Texas Long-Arm Statute, due at least to its extensive business in this District, including by reason of their infringement alleged herein.

### III. VENUE

5. Venue is proper in this district under 28 U.S.C. §§ 139l(b) and 1400(b). Defendant has its principal place of business at 11525 Stonehollow Dr. Ste. A-135, Austin, TX 78758.

## IV. THE ASSERTED PATENT

### *A. The '457 Patent*

6.     U.S. Patent No. 10,405,457, entitled "Appliance Immersion Cooling System," was duly and legally issued on September 3, 2019 by the U.S. Patent and Trademark Office. (the '457 Patent). The underlying application, U.S. Patent Application No. 14/355,533, was filed on April 30, 2014. The underlying PCT application was filed on December 13, 2013, which claims priority to US provisional application No. 61/737,200 (filed December 14, 2012) and to US provisional application No. 61/832,211 (filed June 7, 2013). A true and correct copy of the '457 Patent is attached as **Exhibit A** and incorporated by reference. The USPTO extended the term of the '457 Patent by 680 days.

7.     Midas is the assignee of all right, title, and interest in the '457 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '457 Patent. Accordingly, Midas possesses the exclusive right and has standing to prosecute the present action for infringement of the '457 Patent by Defendant. The '457 Patent is presumed to be valid.

## V. INFRINGEMENT

8.     GRC has at least two products that infringe the Asserted Patent in this case. These products are the ICEraQ10 and the HashRaQ Max. GRC has made, had made, offered for sale and/or sold both the ICEraQ10 and the HashRaQ Max products, and on information and belief GRC continues to make, have made, offers for sale, and are selling both the ICEraQ10 and the HashRaQ Max. As a consequence, GRC has both past infringement and on-going infringement of the '457 Patent.

**A.  GRC ICEraQ10**

   *i.   Infringement of Claim 1 of the '457 Patent*

9.     The ICEraQ10 literally infringes all elements of Claim 1 of the '457 patent. Attached as **Exhibit B** to this Complaint is a claim chart comparing the ICEraQ10 product to each and every limitation in Claim 1 of the '457 Patent. Exhibit B is fully incorporated

by reference into this Complaint. To the extent these limitations are not literally found, they are found under the doctrine of equivalence.

10. The ICEraQ10 comprises a tank designed to immerse a plurality of electronic appliances in dielectric fluid in respective appliance slots distributed vertically, along and extending transverse to a long wall of the tank. (See Exhibit B at 1-2). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

11. The ICEraQ10 literally has a weir integrated horizontally into the long wall of the tank adjacent all appliance slots, having an overflow lip adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot. (See Exhibit B at 2-4).To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

12. The ICEraQ10 literally has a dielectric fluid recovery reservoir positioned vertically beneath the overflow lip of the weir and adapted to receive the dielectric fluid over the weir. (See Exhibit B at 4). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

13. The ICEraQ10 literally has a primary circulation facility adapted to circulate the dielectric fluid through the tank. (See Exhibit B at 4-6). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

14. The ICEraQ10 literally has a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upward through each appliance slot. (See Exhibit B at 6-7). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

15. The ICEraQ10 literally has a secondary fluid circulation facility adapted to extract heat from the dielectric fluid circulation in the primary circulation facility and dissipate to the environment the heat so extracted. (See Exhibit B at 7-8). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

16. The ICEraQ10 literally has a control facility adapted to coordinate the

operation of the primary and secondary fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank. (See Exhibit B at 8-9). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

        ii.    *Infringement of Claim 2 of the '457 Patent*

17. The ICEraQ10 literally infringes all the elements of Dependent Claim 2. For example, the ICEraQ10 has a system of claim 1 wherein the tank and primary circulation facility comprise a highly integrated module. (See Exhibit B at 10). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

        iii.    *Infringement of Claim 3 of the '457 Patent*

18. The ICEraQ10 literally infringes all the elements of Dependent Claim 3. For example, The ICEraQ10 has The system of claim 1 wherein the tank further comprises an interconnected panel facility adapted to mount appliance support equipment. (See Exhibit B at 10-11). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

        iv.    *Infringement of Claim 6 of the '457 Patent*

19. The ICEraQ10 literally infringes all elements of Claim 6 of the '457 patent. For example, the ICEraQ10 comprises a tank designed to immerse a plurality of electronic components in dielectric fluid in a respective appliance slot distributed vertically, along and extending transverse to a long wall of the tank. (See Exhibit B at 11). To the extent these limitations are not literally found, they are found under the doctrine of equivalence.

20. The ICEraQ10 literally has a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, having an overflow lip adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot. (See Exhibit B at 11-12). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

21. The ICEraQ10 literally has a dielectric fluid recovery reservoir positioned vertically beneath the overflow lip of the weir and adapted to receive the dielectric fluid as it

flows over the weir. (See Exhibit B at 12-15). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

22. The ICEraQ10 literally has a primary circulation facility adapted to circulate the dielectric fluid through the tank, comprising a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upward through each appliance slot. (See Exhibit B at 15-16). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

23. The ICEraQ10 literally has a control facility adapted to control the operation of the primary fluid circulation facility as a function of the temperature of the dielectric fluid in the tank. (See Exhibit B at 17-18). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

### B.  HashRaQ Max

  i.  *Infringement of Claim 1 of the '457 Patent*

24. The HashRaQ Max literally infringes all elements of Claim 1 of the '457 patent. For example, the HashRaQ Max comprises a tank designed to immerse a plurality of electronic components in dielectric fluid in a respective appliance slot distributed vertically, along and extending transverse to a long wall of the tank. (See Exhibit B at 19). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

25. The HashRaQ Max literally has a weir integrated horizontally into the long wall of the tank adjacent all appliance slots, having an overflow lip adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot. (See Exhibit B at 20). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

26. The HashRaQ Max literally has a dielectric fluid recovery reservoir positioned vertically beneath the overflow lip of the weir and adapted to receive the dielectric fluid over the weir. (See Exhibit B at 21). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

27. The HashRaQ Max literally has a primary circulation facility adapted to circulate the dielectric fluid through the tank, comprising: a plenum positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot. (See Exhibit B at 20-21). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

28. The HashRaQ Max literally has a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upward through each appliance slot. (See Exhibit B at 21-22). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

29. The HashRaQ Max literally has a secondary fluid circulation facility adapted to extract heat from the dielectric fluid circulation in the primary circulation facility and dissipate to the environment the heat so extracted. (See Exhibit B at 22-23). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

30. The HashRaQ Max literally has a control facility adapted to coordinate the operation of the primary and secondary fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank. (See Exhibit B at 23-24). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

      ii.    *Infringement of Claim 2 of the '457 Patent*

31. The HashRaQ Max literally infringes all the elements of Dependent Claim 2. For example, the HashRaQ Max has system of claim 1 wherein the tank and primary circulation facility comprise a highly integrated module. (See Exhibit B at 24-25). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

      iii.    *Infringement of Claim 3 of the '457 Patent*

32. The HashRaQ Max literally infringes all the elements of Dependent Claim 3. For example, The HashRaQ Max has the system of claim 1 wherein the tank further comprises an interconnected panel facility adapted to mount appliance support equipment. (See Exhibit B at 25). To the extent this limitation is not literally found, is it found under the

doctrine of equivalence.

      *iv.*    *Infringement of Claim 6 of the '457 Patent*

33. The HashRaQ Max literally infringes all elements of Claim 6 of the '457 Patent. For example, the HashRaQ Max comprises a tank designed to immerse a plurality of electronic components in dielectric fluid in a respective appliance slot distributed vertically, along and extending transverse to a long wall of the tank. (See Exhibit B at 26). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

34. The HashRaQ Max literally has a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, having an overflow lip adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot. (See Exhibit B at 26-27). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

35. The HashRaQ Max literally has a dielectric fluid recovery reservoir positioned vertically beneath the overflow lip of the weir and adapted to receive the dielectric fluid as it flows over the weir. (See Exhibit B at 27). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

36. The HashRaQ Max literally has a dielectric fluid recovery reservoir positioned vertically beneath the overflow lip of the weir and adapted to receive the dielectric fluid over the weir. (See Exhibit B at 27). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

37. The HashRaQ Max literally has a primary circulation facility adapted to circulate the dielectric fluid through the tank, comprising a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upward through each appliance slot. (See Exhibit B at 27-28). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

38. The HashRaQ Max literally has a plenum, positioned adjacent to the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upward through

each appliance slot. (See Exhibit B at 29). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

39. The HashRaQ Max literally has a control facility adapted to control the operation of the primary fluid circulation facility as a function of the temperature of the dielectric fluid in the tank. (See Exhibit B at 29-30). To the extent this limitation is not literally found, is it found under the doctrine of equivalence.

### VI. CAUSES OF ACTION

### Count 1: Direct Infringement of U.S. Patent No. 10,405,457

40. Midas incorporates by reference the preceding paragraphs, as if fully set forth herein.

41. The application that matured into the '457 Patent was filed in the United States on April 30, 2014[1], and was legally issued by the United States Patent and Trademark Office on September 3, 2019. The '457 Patent is valid and enforceable and presumed as such pursuant to 35 U.S.C. § 282.

42. Without a license or permission from Midas, Defendant has directly infringed and continues to directly infringe one or more claims of the '457 Patent by making, having made, using, offering for sale, or selling products and devices that embody the patented invention in violation of 35 U.S.C. § 271.

43. Defendant Green Revolution Cooling, Inc. directly infringes the '457 Patent under 35 U.S.C. §271(a) by (1) manufacturing infringing products within the United States; (2) offering for sale those infringing products within the United States; (3) selling those infringing products within the United States and (4) benefitting and profiting from the infringement.

44. Defendant's infringement has been, and continues to be, knowing, intentional, and willful, at least beginning in 2021.

45. Defendant's acts of infringement of the '457 Patent has caused and will

---

[1] Midas filed PCT application No. 14/355,533, which was filed in the United States under 35 U.S.C. § 371(c)(1) on April 30, 2014. The application claims priority to US Provisional application No. 61/737,200, filed Dec. 14, 2012 and to US Provisional application No. 61/832,211, filed June. 7, 2013.

continue to cause Midas damages for which Midas is entitled compensation pursuant to 35 U.S.C. § 284. Defendant's acts of infringement of the '457 Patent have caused and will continue to cause Midas immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Midas has no adequate remedy at law.

46. Pursuant to 35 U.S.C. §271(a), Defendant has directly infringed one or more claims of the '457 Patent in the Western District of Texas, the State of Texas, and elsewhere in the United States, by at least making, having made, using, selling, and/or offering for sale appliance immersion cooling systems that satisfy every limitation of at least claims 1, 2, 3 and 6 of the'457 Patent. If any limitation of claims 1, 2, 3 or 6 is not practiced in a literal sense, then that limitation is found under the doctrine of equivalents.

47. Pursuant to 35 U.S.C. §271(a), Defendant Green Revolution Cooling has directly infringed claims 1, 2, 3 and 6 of the '457 Patent in the Western District of Texas, the State of Texas, and elsewhere in the United States by way of: (1) manufacturing products, specifically the HashRaQ Max and the ICEraQ10; and (2) by offering for sale in the United States the HashRaQ Max and the ICEraQ10 that directly infringes claims 1, 2, 3 and 6 of the '457 patent.

48. See **Exhibit B** which is an exemplary claim chart detailing representative infringement of claims 1, 2, 3 and 6 of the'457 Patent.

**Count 2: Willful Infringement**

49. Midas incorporates by reference the preceding paragraphs, as if fully set forth herein.

50. Pursuant to 35 U.S.C. §284 Defendant has willfully and maliciously infringed the '457 Patent at least since the date of its actual notice of the patents and their infringement. Specifically, Defendant has continued to make, have made, offered for sale and/or sell its infringing immersion cooling systems. Indeed, Defendant has aggressively sought to expand their operations and add additional immersion cooling systems, knowing throughout

their existence that they infringe Midas' patents.

51.     Defendant's infringement has been egregious, wanton, malicious, and in bad faith.

## VII. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Midas respectfully requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

Wherefore, Midas requests judgment against the Defendant as follows:

A.     A judgment that the '457 Patent is valid and enforceable;

B.     A judgment that Defendant has directly infringed the '457 Patent either literally or under the Doctrine of Equivalents, in violation of 35 U.S.C. § 271(a);

C.     Permanently enjoining the Defendant, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of, the '457 Patent pursuant to 35 U.S.C. § 283;

D.     Ordering Defendant to pay to Midas its lost profits if would have made but-for the Defendant's infringement pursuant to 35 U.S.C. § 284, or at a minimum a reasonable royalty;

E.     Ordering Defendant to account for and pay damages adequate to compensate Midas for Defendant's infringement of the '457 Patent including pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

F.     Ordering an accounting by Defendant for any infringing activity not presented at trial and an award by the court of additional damages for any such infringing activity to Midas;

G.     Ordering that the Defendant's infringement of the '457 patent is willful pursuant to 35 U.S.C. § 284; because:

      i.      Defendant had knowledge of the '457 Patent based on Defendant's past interaction with Plaintiff,

      ii.      Defendant infringed the asserted patent and Defendant's conduct was intentional, deliberate, malicious, consciously wrongful or in bad faith; and

      iii.      Therefore, Plaintiff's damages award shall be increased by up to three times the actual amount assessed;

H.      Declaring this case exceptional and ordering Defendant to pay the cost of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

I.      Awarding such other and further relief as this Court deems just and proper.

DATED: March 29, 2024      Respectfully submitted,

      */s/ Joseph E. Thomas*
Joseph E. Thomas *(admitted p.h.v)*
William J. Kolegraff *(admitted p.h.v)*
Grant J. Thomas *(admitted p.h.v)*
THOMAS WHITELAW & KOLEGRAFF LLP
18101 Von Karman Ave., Suite 230
Irvine, California 92612
Telephone: (949) 679-6400
Fax: (949) 679-6405
jthomas@twtlaw.com
bkolegraff@twtlaw.com
gthomas@twtlaw.com

Michael C. Smith
Texas Bar No. 18650410
michael.smith@solidcounsel.com
Scheef & Stone, LLP
113 E. Austin Street
Marshall, TX 75670
(903) 938-8900

Attorneys for Plaintiff Midas Green Technologies LLC