# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of:<br>    Christopher L. Boyd, *et al.*<br>Serial No.: 14/355,533<br>Filed:  30 April 2014<br>For:    Appliance Immersion Cooling<br>        System | 31 January 2017<br><br><br>Art Unit: 3744<br>Examiner: D. Russell |

### *Amendment*

HONORABLE COMMISSIONER OF PATENTS AND TRADEMARKS,

SIR:

In the Office Action mailed 4 November 2016 (Office Action), the Examiner rejected claims 1-10 in the subject Application. In response, Applicants submit the following amendments and remarks:



# Claims

1. (Presently amended) An appliance immersion cooling system comprising:

   a tank adapted to immerse in a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot distributed vertically along, and extending transverse to, a long wall of the tank, the tank comprising:

   a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, <u>having an overflow lip</u> adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot;

   a primary circulation facility adapted to circulate the dielectric fluid through the tank, comprising:

   a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot;

   a secondary fluid circulation facility adapted to extract heat from the dielectric fluid circulating in the primary circulation facility, and to dissipate to the environment the heat so extracted; and

   a control facility adapted to coordinate the operation of the primary and secondary fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank.

2. (Presently amended) The system of claim 1 wherein the tank and primary circulation facility comprise a ~~tightly co-located~~ <u>highly-integrated</u> module.

3. (Original) The system of claim 1 wherein the tank further comprises:
   an interconnect panel facility adapted to mount appliance support equipment.

4. (Original) The system of claim 1 wherein the primary circulation facility further comprises:

> at least first and second primary circulation sub-facilities, each adapted to operate independently to circulate the dielectric fluid through the tank;

wherein the control facility is further adapted to coordinate the operation of the first and second primary circulation sub-facilities and the secondary fluid circulation facilities so to maintain the temperature of the dielectric fluid in the tank substantially between a predetermined minimum temperature and a predetermined maximum temperature.

5. (Original) The system of claim 1 wherein the control facility further comprises a communication facility adapted to facilitate monitoring and control of the control facility from a remote location.

6. (Presently amended) A tank module adapted for use in an appliance immersion cooling system, the tank module comprising:

> a tank adapted to immerse in a dielectric fluid a plurality of electrical appliances, each in a respective appliance slot distributed vertically along, and extending transverse to, a long wall of the tank, the tank comprising:
>
>> a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots, <u>having an overflow lip</u> adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot;
>
> a primary circulation facility adapted to circulate the dielectric fluid through the tank, comprising:
>
>> a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot; and
>
>> a control facility adapted to control the operation of the primary fluid circulation facility as a function of the temperature of the dielectric fluid in the tank.

7. (Presently amended) The module of claim 6 wherein the tank and primary circulation facility comprise a ~~tightly co-located~~ <u>highly-integrated</u> module.

8. (Original) The module of claim 6 wherein the tank further comprises:

> an interconnect panel facility adapted to mount appliance support equipment.

9. (Original) The module of claim 6 wherein the primary circulation facility further comprises:

> at least first and second primary circulation sub-facilities, each adapted to operate independently to circulate the dielectric fluid through the tank;

wherein the control facility is further adapted to coordinate the operation of the first and second primary circulation sub-facilities so to maintain the temperature of the dielectric fluid in the tank substantially between a predetermined minimum temperature and a predetermined maximum temperature.

10. (Original) The module of claim 6 wherein the control facility further comprises a communication facility adapted to facilitate monitoring and control of the control facility from a remote location.

## Remarks

1. In the Office Action, the Examiner rejected claims 2 and 7 under 35 USC 112(b) as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventors regard as their invention. In particular, the Examiner has asserted that the term "tightly co-located" is not sufficiently understood, or specifically defined by the specification, for its metes and bounds to be definite. As explained in paragraph [0044], the Applicants intend the term "tightly co-located" to characterize the essential components of the primary circulation facility 28 as being physically located sufficiently close to the tank 14 "so as to form a highly-integrated module", see, lines 6-8. As noted in lines 3-6, the principle purpose in so arranging these components is to "move the secondary fluid to the point of heat exchange with the primary fluid, rather than to move the primary fluid to the point of exchange with the secondary fluid." As noted, "[i]n addition to conserving valuable floor space in a typical data center installation, the resulting modular configuration facilitates both easy initial installation and subsequent upgrade to efficiently satisfy increasing data center workloads", see, lines 14-17. In view of these details and the example configuration set forth in the drawings, Applicants respectfully submit that the term "tightly co-located" *is* sufficiently well defined to satisfy the requirements of 35 USC §112(b). Notwithstanding, in an effort to reduce issues, Applicants have amended claims 2 and 7 to replace the term "tightly co-located" with the term "highly-integrated", an alternative term used in the specification to describe this physical arrangement.

2. In the Office Action, the Examiner has rejected 1-10 under 35 USC §102(b) as anticipated by US Application Serial No. 2011/0132579, Best, *et al.* ("Best"). In section 5 of the Office Action, the Examiner has suggested that, in Best, the "common manifold area" defined between the tops of the devices and the surface of the fluid corresponds to Applicants "weir"; and that the "common manifold area" defined between the bottoms of the devices and the bottom of the tank corresponds to Applicants "plenum". However, neither of these "pseudo-structures" is present when the tank is empty of fluid; whereas both of these <u>physical structures</u> are required by Applicants' apparatus claims 1 and 6, even in the absence of fluid.

Perhaps recognizing that this §102(b) position is not as strong as might be desired, the Examiner has, in the alternative, rejected claims 1-10 under 35 USC 1§03(a) as being obvious over Best in view of US Application Serial No. 2006/0126292, Pfannl, *et al.* ("*Pfannl*"). In this rejection, the Examiner has suggested that, in Pfannl, the openings 122 into the outlet plenum 112, collectively, perform substantially the same function as Applicants' weir. However, Applicants respectfully note that, in both claim 1 and claim 6, the weir is defined as being "integrated horizontally into the long wall of the tank adjacent all appliance slots, [and] adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot". In contrast, in Pfannl, each of the openings 122 into the plenum 112 is disposed adjacent only to a respective single ONE of the appliance slots, and none is disposed adjacent to ALL of the appliance slots. Further, the rate of air flow through each of the openings 122 into the plenum 112 is NOT substantially uniform since the outlet port 112a itself does not lie adjacent to each of the openings 122. It follows, therefore, that the function performed by the set of openings 122 into the plenum 112 is **not** equivalent to the function performed by Applicants' weir.

In an effort to further distinguish Applicants' weir from the plenum structure in Pfannl, Applicants have amended claims 1 and 6 to emphasize that it is the "overflow lip" of the weir that is "adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot". Support for this amendment can be found in paragraph [0029].

3.   Applicants respectfully submit that claims 1-10, as amended herein, patentably distinguish over the prior art of record. Accordingly, Applicants request reconsider of the claims, as amended herein, and allowance thereof.

Respectfully submitted,
Christopher L. Boyd, *et al.*

/Jeffrey Van Myers/

Jeffrey Van Myers
Attorney for Applicants
Reg. No. 27,362
Ph: 512.858.7453

# Electronic Acknowledgement Receipt

| EFS ID: | 28222415 |
|---|---|
| Application Number: | 14355533 |
| International Application Number: | |
| Confirmation Number: | 3995 |
| Title of Invention: | Appliance Immersion Cooling System |
| First Named Inventor/Applicant Name: | Christopher L. Boyd |
| Customer Number: | 44070 |
| Filer: | Jeffrey Van Myers |
| Filer Authorized By: | |
| Attorney Docket Number: | JMG001-01 |
| Receipt Date: | 31-JAN-2017 |
| Filing Date: | 30-APR-2014 |
| Time Stamp: | 16:43:59 |
| Application Type: | U.S. National Stage under 35 USC 371 |

# Payment information:

| Submitted with Payment | no |
|---|---|

# File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Applicant Arguments/Remarks Made in an Amendment | JMG001_a1_170131.pdf | 88486<br>001d7c1fcb32be57d664d6d110518f89e7df96bc | no | 7 |

**Warnings:**

| Information: | |
|---|---|
| **Total Files Size (in bytes):** | 88486 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 14/355,533 | Filing Date 04/30/2014 ☐ To be Mailed |
|---|---|---|

ENTITY: ☐ LARGE  ☒ SMALL  ☐ MICRO

### APPLICATION AS FILED – PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

### APPLICATION AS AMENDED – PART II

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| AMENDMENT | 01/31/2017 | | | | | | |
| | Total (37 CFR 1.16(i)) | * 10 | Minus | ** 20 | = 0 | x $40 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 2 | Minus | *** 3 | = 0 | x $210 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| AMENDMENT | | | | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
CAROL BARNES

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*