

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/355,533 | 04/30/2014 | Christopher L. Boyd | JMG001-01 | 3995 |

44070        7590        05/17/2017
J. V. MYERS & ASSOCIATES, P.C.
P. O. BOX 130
DRIFTWOOD, TX 78619

| EXAMINER |
|---|
| RUSSELL, DEVON L |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3744 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 05/17/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

jvm@jvmyers.com
jp@jvmyers.com
aap@jvmyers.com



EXHIBIT 6

PTOL-90A (Rev. 04/07)

| Office Action Summary | Application No. 14/355,533 | Applicant(s) BOYD ET AL. |
|---|---|---|
| | Examiner DEVON RUSSELL | Art Unit 3744 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on *1/31/17*.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☒ This action is **FINAL**.   2b) ☐ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☒ Claim(s) *1-10* is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☒ Claim(s) *1-10* is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined **allowable**, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

## Application Papers

10) ☐ The specification is objected to by the Examiner.
11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
      a) ☐ All   b) ☐ Some**  c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
   ** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

Application/Control Number: 14/355,533 Page 2
Art Unit: 3744

## DETAILED ACTION

### *Claim Amendments*

1.  The claims dated 1/31/17 are entered. Claims 1-2 and 6-7 are amended. Claims 1-10 are pending and addressed below

### *Claim Rejections - 35 USC § 103*

2.  The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

3.  The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under pre-AIA 35 U.S.C. 103(a) are summarized as follows:

   1. Determining the scope and contents of the prior art.

   2. Ascertaining the differences between the prior art and the claims at issue.

   3. Resolving the level of ordinary skill in the pertinent art.

   4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

4.  Claims 1-10 are rejected under pre-AIA 35 U.S.C. 102 (b) as anticipated by Best (US 2011/0132579) or, in the alternative, under pre-AIA 35 U.S.C. 103(a) as obvious over Best in view of Pfahnl et al. (US 2006/0126292).

3

Application/Control Number: 14/355,533                                                                 Page 3
Art Unit: 3744

Regarding claims 1 and 6, Best teaches an appliance immersion cooling system comprising: a tank (e.g. 510, 610, 710, 810) adapted to immerse (622, 722, 822) in a dielectric fluid (Para. [0025]) a plurality of electrical appliances (120), each in a respective appliance slot (Figs. 4, 6, 11) distributed vertically along, and extending transverse to, a long wall of the tank (L; e.g. Figs. 3-4), the tank comprising: a weir (e.g. 450, 550, heated liquid coolant outlet in Fig. 14, etc.) having an overflow lip (the bottom lip of the opening (interpreted as in the applicant's specification wherein the 'lip' is only the bottom surface of the opening 22), integrated horizontally into the long wall of the tank adjacent all appliance slots (see the long wall in each figure in which the weir is located), adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot (Para. [0102]; the "common manifold area" defined by the tops of the slots and the devices 120, 820);

a primary circulation facility adapted to circulate the dielectric fluid through the tank (see 440/450, 540/550, etc.), comprising: a plenum, positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot (Para. [0086]; Figs. 5-6; $H_L$); a secondary fluid circulation facility adapted to extract heat from the dielectric fluid circulating in the primary circulation facility, and to dissipate to the environment the heat so extracted (150; 250; 350); and a control facility adapted to coordinate the operation of the primary and secondary fluid circulation facilities as a function of the temperature of the dielectric fluid in the tank (380, 370; Fig. 2, "temp data").

Application/Control Number: 14/355,533                                                                Page 4
Art Unit: 3744

If it is not accepted that Best positively discloses the weir, Pfahnl also teaches a cooling system wherein a dielectric fluid (air) as a coolant fully surrounds a rack (see figures) of electrical appliances (servers) in a tank (118), wherein the dielectric fluid is introduced (via 110a) into a plenum (110) positioned adjacent the bottom of the tank, adapted to dispense the dielectric fluid substantially uniformly upwardly through each appliance slot (as directed by openings 122) and a weir, integrated horizontally into the long wall of the tank adjacent all appliance slots (the bottom wall of 112 with openings 122)adapted to facilitate substantially uniform recovery of the dielectric fluid flowing through each appliance slot (via 122).

It would have been obvious to one of ordinary skill in the art at the time of the invention to form the manifold of Best with the weir formed as a bottom wall of said manifold with holes opening between each of the electronic device slots, as taught by Pfahnl, such that the dielectric fluid would still be directed in its proper flow direction despite the lack of a full rack of electronic devices.

Best further teaches that: the tank and primary circulation facility comprise a highly integrated module (the devices are all inherently physically connected to one another and located in the same facility; see also Figs. 1B or 11), as per claims 2 and 7; interconnect panel facilities adapted to mount appliance support equipment (840), as per claims 3 and 8; first and second primary circulation sub-facilities (880 on the left/right of tank; e.g. Fig. 14), each adapted to operate independently to circulate the dielectric fluid through the tank (see Fig. 14), the control facility is further adapted to

coordinate the operation of the first and second primary circulation sub-facilities and the secondary fluid circulation facilities to maintain the temperature of the dielectric fluid in the tank substantially between a predetermined minimum temperature and a predetermined maximum temperature (Para. [0082]), as per claims 4 and 9; and, the control facility (380) further comprises a communication facility (its software; Para. [0082] which performs the communications) adapted to facilitate monitoring and control of the control facility from a remote location (Para. [0081]-[0082]), as per claims 5 and 10.

### Response to Arguments

5.     Applicant's arguments filed 1/31/17 have been fully considered but they are not persuasive.

In regards to the assertion that the "plenum" of Best is a pseudo-structure only present when the tank is full of fluid, the examiner disagrees. The plenum is defined by the walls and bottom of the tank and the bottom surfaces of the devices 120. In the optionally presented 103 rejection, the plenum is also structurally defined by the piece forming openings 122 in the bottom portion 110.

Applicant's arguments that the "weir" in the prior art does not lie adjacent "all appliance slots" the examiner believes that grammatically, the phrase "adjacent all appliance slots", as presently claimed modifies "the long wall of the tank" and not the weir. Furthermore, as described by Best, the positioning of his weirs still results in even flow through the devices as described in paragraph [0102].

Application/Control Number: 14/355,533   Page 6
Art Unit: 3744

Finally, the examiner would like to point out that, as far as the "weir" structure is defined in the disclosure it merely amounts to an opening in a wall and its "lip" is never defined as more than the bottom surface of that opening. If the applicant believes that there is further structural limitation that should be associated with the term weir, he is requested to point out where the disclosure supports that in any further communications.

## *Conclusion*

6. Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action. Accordingly, **THIS ACTION IS MADE FINAL**. See MPEP § 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the date of this final action.

Application/Control Number: 14/355,533 Page 7
Art Unit: 3744

Any inquiry concerning this communication or earlier communications from the examiner should be directed to DEVON RUSSELL whose telephone number is (571)270-1858. The examiner can normally be reached on M-Th, 9-4.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Alex Elve can be reached on 571.272.1173. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/DEVON RUSSELL/
Primary Examiner, Art Unit 3744