**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| MIDAS GREEN TECHNOLOGIES, LLC, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 6:24-CV-166-ADA |
| GREEN REVOLUTION COOLING, INC., | § § § | |
| Defendant. | § § | |

**DEFENDANT GREEN REVOLUTION COOLING, INC.'S
REPLY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I.   Introduction ........................................................................................................................ 1
II.  Disputed Terms and Phrases ............................................................................................. 1
    A.   "weir" (claims 1, 6) ................................................................................................. 1
    B.   "a weir, integrated horizontally into the long wall of the tank" (claims 1, 6) ......... 4
    C.   "a dielectric fluid recovery reservoir . . . adapted to receive the dielectric fluid as it flows over the weir" (claims 1, 6) ................................................................................. 7
    D.   "the tank and primary circulation facility comprise a highly-integrated module" (claim 2) ............................................................................................................................ 9
III. Conclusion ....................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aylus Networks, Inc. v. Apple Inc.*,
  856 F. 3d 1353 (Fed. Cir. 2017) ...............................................................................................3

*Bicon, Inc. v. Straumann Co.*,
  441 F.3d 945 (Fed. Cir. 2006) ...................................................................................................6

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
  713 F.3d 1090 (Fed. Cir. 2013) .................................................................................................3

*Hoganas AB v. Dresser Indus., Inc.*,
  9 F.3d 948 (Fed. Cir. 1993) .......................................................................................................6

*Immersion Sys. LLC v. Midas Green Techs., LLC*,
  IPR2021-01176, Paper 10 (PTAB Oct. 14, 2021) .....................................................................2

*Interval Licensing LLC v. AOL, Inc.*,
  766 F.3d 1364 (Fed. Cir. 2014) ...............................................................................................10

*Maurice Mitchell Innovations, L.P. v. Intel Corp.*,
  2006 WL 1751779 (E.D. Tex. June 21, 2006)...........................................................................3

*MPHJ Tech Invs., LLC v. Ricoh Americas Corp.*,
  847 F.3d 1363 (Fed. Cir. 2017) .................................................................................................8

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ..................................................................................................................4

*Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*,
  868 F.3d 1013 (Fed. Cir. 2017) .................................................................................................2

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
  135 S. Ct. 831 (2015).................................................................................................................3

*TQP Development, LLC v. Intuit Inc.*,
  2014 WL 2810016 (E.D. Tex. June 20, 2014)...........................................................................3

*Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*,
  593 F.3d 1346 (Fed. Cir. 2010) .............................................................................................3, 4

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
  200 F.3d 795 (Fed. Cir. 1999) ...................................................................................................2

I.  **INTRODUCTION**

Green Revolution Cooling, Inc. ("GRC") respectfully submits this reply brief regarding claim construction and U.S. Patent 10,405,457 ("the '457 patent"), which is allegedly owned by Midas Green Technologies, LLC ("Midas").

Midas's Responsive Brief (Dkt. 35, "Midas Br.") ignores the parties' actual disputes and mischaracterizes GRC's arguments. As detailed below, Midas's proposed construction of "weir" revokes a definition that Midas used at the Patent Trial and Appeal Board ("PTAB") and previously proposed to this Court as a stipulated construction. Midas's tactical about-face should be rejected because it risks inconsistent results, undermines the public notice function of the patent system, and invites gamesmanship in this and future cases. The remainder of Midas's brief shrouds its positions behind purported "plain meaning" constructions that are anything but. Midas's arguments are further obfuscated by Midas's repeated references to (1) a POSITA's understanding without citing any supporting evidence and (2) documents that Midas did not file with its brief. As shown in GRC's opening brief (Dkt. 29, "GRC Br.") and herein, the parties dispute the scope of the phrases discussed below and GRC's proposals should be adopted.

II.  **DISPUTED TERMS AND PHRASES**

A.  **"weir" (claims 1, 6)**

| Term | GRC Construction | Midas Construction |
|---|---|---|
| "weir" (claims 1, 6) | "an overflow structure or barrier that determines the level of liquid" | "an overflow structure or barrier that a liquid flows over" |

GRC sought to reduce disputes and promote consistency by adopting the definition Midas previously used to define "weir" at the patent office and in this Court. GRC's effort was for naught, as Midas now argues against its own definition. To avoid inconsistency and dissuade

1

gamesmanship, the previously-adopted language should be adopted again here.

First, the parties agree that a "weir" is "an overflow structure or barrier." Liquid must also flow over the weir, because that requirement is set forth expressly in the claim language. *See, e.g.*, '457 patent at claim 1 ("a dielectric fluid recovery reservoir positioned vertically beneath the overflow lip of the weir and adapted to receive the dielectric fluid as it flows over the weir"). Thus, this Court should reject Midas's proposed construction because it does not resolve the dispute between the parties, and Courts "need only construe claims 'that are in controversy, and only to the extent necessary to resolve the controversy.'" *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) (quoting *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999)).

Second, and more concerning, is Midas's attempt to walk back its definitional representations to this Court and the PTAB. As stated in GRC's opening brief, Midas proposed the construction requested by GRC in the *Rhodium* case. *See* GRC Br. at 5-6; Ex. 2 at 1 (*Midas Green Techs., LLC v. Rhodium Enters., Inc.*, No. 6:22-cv-00050-ADA (hereinafter "*Rhodium*"), Dkt. 50 at 2 (W.D. Tex. July 11, 2022)). Before that, Midas defined "weir" in arguments to the PTAB in exactly the same way. Ex. 9[1] (*Immersion Sys. LLC v. Midas Green Techs., LLC*, IPR2021-01176, Paper 10 [Patent Owner Preliminary Response ("POPR")] at 3 (PTAB Oct. 14, 2021) ("a weir (22) (i.e., an overflow structure or barrier that determines the level of a liquid) . . ."). This Court, GRC, and the interested public are entitled to rely on Midas's prior definitions/constructions, for at least the reason that prior claim construction proceedings involving the same patents-in-suit are entitled to deference. *Maurice Mitchell Innovations, L.P. v.*

---

[1] Citations to Exhibits 9-10 are to the corresponding exhibit attached to the Reply Declaration of Ashley Moore filed concurrently herewith; other exhibits are to the exhibit attached to the Declaration of Ashley Moore filed with GRC's opening claim construction brief (Dkt. 31).

2

*Intel Corp.*, 2006 WL 1751779, at *4 (E.D. Tex. June 21, 2006) (Davis, J.); *see TQP Development, LLC v. Intuit Inc.*, 2014 WL 2810016, at *6 (E.D. Tex. June 20, 2014) (Bryson, J.) ("[P]revious claim constructions in cases involving the same patent are entitled to substantial weight, and the Court has determined that it will not depart from those constructions absent a strong reason for doing so."); *see also Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 839-40 (2015) ("prior cases will sometimes be binding because of issue preclusion and sometimes will serve as persuasive authority") (citation omitted). Likewise, in official papers before the patent office including POPRs, "the patent owner can define claim terms and otherwise make representations about claim scope . . . . Regardless of when the statements are made during the proceeding, the public is 'entitled to rely on those representations when determining a course of lawful conduct, such as launching a new product or designing-around a patented invention.'" *Aylus Networks, Inc. v. Apple Inc.*, 856 F. 3d 1353, 1362 (Fed. Cir. 2017) (citing *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013)). Midas defined "weir" in its previous POPR, which is now part of the intrinsic record of the '457 patent. Midas also proposed the same definition in the *Rhodium* case during claim construction thereby causing this Court to adopt it as a construction. Midas should not be permitted to play games with the scope of its claims by redefining and broadening the meaning it previously applied.

  Finally, Midas argues that "four" legal doctrines—issue preclusion/collateral estoppel and claim preclusion/res judicata—are not discussed in GRC's opening brief and do not apply. Midas Br. at 12. It is unclear why Midas raises these strawmen given their irrelevance. That said, the Court has discretion to apply another estoppel doctrine—judicial estoppel—given its adoption in a prior proceeding of a claim construction proposed by Midas. *Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1353 (Fed. Cir. 2010) (citing *New Hampshire v.*

3

*Maine*, 532 U.S. 742, 749 (2001)). Determining whether a party's inconsistent legal positions constitute judicial estoppel is informed by three non-limiting factors: (1) whether the party's later position clearly inconsistent with its earlier position; (2) whether the party succeeded in persuading a court to accept that party's earlier position, so that accepting the inconsistent position would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Rubber Thread*, 593 F.3d at 1354; *New Hampshire*, 532 U.S. at 750-51. All three factors are met here: (1) Midas is removing an express liquid-level determination requirement from its prior definition/construction of "weir," (2) Midas previously proposed and caused this Court to adopt a construction Midas now says is wrong, which creates the perception that Midas successfully misled the Court, and (3) Midas derives an unfair benefit by expanding the scope of its claims after years of telling the public they meant something else.

For the foregoing reasons, Midas's new construction should be rejected and this Court should construe "weir" consistent with past proceedings.

**B.** "a weir, integrated horizontally into the long wall of the tank" (claims 1, 6)

| Term | GRC Construction | Midas Construction |
|---|---|---|
| "a weir, integrated horizontally into the long wall of the tank" (claims 1, 6) | a weir having a horizontal (as opposed to vertical) orientation that is integrated into the long wall of the tank | Plain meaning |

Midas's brief confirms that its plan in this case is to read out two explicit requirements of this disputed phrase: (1) the integration of the weir into the long wall and (2) the horizontal orientation. Midas Br. at 13-16.

Midas argues that it "has always constructed and used the full plain language of this limitation," while blaming GRC for causing confusion and "oddly assert[ing]" that Midas is reading out a claim limitation. Midas Br. at 13. That is false. Prior to filing its brief, Midas had never characterized the plain meaning of this phrase let alone offered a construction. Likewise, Midas's allegation that GRC is "attempting to set up a non-infringement position" is erroneous. *See* Midas Br. at 13. GRC has non-infringement positions, but Midas's infringement allegations, proposed claim construction, and responsive claim construction brief reveal that there is also a fundamental claim construction dispute for the Court to resolve. Since Midas refuses to engage with the actual claim construction dispute, GRC referred to Midas's infringement allegations to contextualize the dispute and show why the Court is being asked to resolve it.

It is also unambiguous that Midas reads "integrated horizontally into the long wall of the tank" out of this disputed phrase. The phrase literally requires integration into a wall. Midas admits it does not think those words have meaning by reading the phrase onto "three gray boxes." Midas Br. at 13. As best seen visually, the alleged "weirs" (the gray boxes) are not part of or otherwise "integrated into" the long wall; they are *at most* adjacent to the long wall of the tank:



Midas Br. at 14. As the image shows, the alleged "weir" and the "long wall" are separate elements; no reasonable person could look at the above image and believe the alleged "weir" is "integrated into" the long wall when they are physically separate elements. *See* GRC Br. at 8-9 (explaining integrated cannot mean "non-integrated" and "horizontal" cannot mean "vertical"); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955-56 (Fed. Cir. 2006) (holding that "concave" cannot be equivalent to "convex"); *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954-55 (Fed. Cir. 1993) (holding that a "solid fiber" cannot be equivalent to a hollow "straw-shaped" element). Indeed, there is an obvious physical gap between the alleged "weir" and the "long wall" in portions of the image above. This Court should clarify that "integrated into the long wall of the tank" is a limiting aspect of the claim language. GRC believes this concept is reflected by the disputed phrase itself as well as by GRC's proposed construction characterizing what GRC believes to be the plain meaning.

Finally, Midas's brief confirms that Midas believes the word "horizontally" has no meaning in the claims. Midas Br. at 13-15. The dispute is not as complicated as Midas suggests. The word "horizontally" in the disputed phrase refers to the orientation of the orifice through which liquid leaves the tank. *See* GRC Br. at 10-11. As such, the phrase covers option A, not option B:



As detailed in GRC's opening brief, this interpretation is consistent with every example in the '457 patent. GRC Br. at 10-12. Midas's contrary interpretation reads "horizontally" out of the claim, as shown by Midas's reliance on vertical orifices. Midas Br. at 14. GRC's proposal clarifies that

issue, and will help a jury understand the plain meaning of this disputed phrase.

### C. "a dielectric fluid recovery reservoir . . . adapted to receive the dielectric fluid as it flows over the weir" (claims 1, 6)

| Term | GRC Construction | Midas Construction |
|---|---|---|
| "a dielectric fluid recovery reservoir . . . adapted to receive the dielectric fluid as it flows over the weir" (claims 1, 6) | the dielectric fluid is received by the recovery reservoir as soon as the fluid flows over the weir | Plain meaning |

Midas argues that GRC's proposed construction is "absurd" because it attributes meaning to the language "as it flows over the weir." Midas Br. at 16-17. Admittedly, GRC thinks that phrase limits the claim: either GRC is right and "as it flows over the weir" has meaning or Midas is right and the express claim language can simply be ignored. As explained below, GRC requests that the Court give this phrase meaning and adopt GRC's construction.

First, Midas mischaracterizes GRC's proposed construction by suggesting that GRC "completely eliminates any defining structure for the fluid recovery reservoir." Midas Br. at 16-18. Midas erroneously ignores the ellipsis in GRC's proposed construction. *Id.* The claim language expressly states that the dielectric fluid recovery reservoir is "positioned vertically beneath the overflow lip of the weir" and neither party disputes that requirement. Any attempt by Midas to suggest otherwise is disingenuous. GRC's ellipsis in the disputed term and GRC's corresponding construction place the focus on the disputed portion of the phrase ("adapted to receive the dielectric fluid *as it flows over* the weir"). Midas Br. at 16-17.

Second, "as it flows over the weir" means that the fluid is received in the reservoir "as soon as the fluid flows over the weir." GRC Br. at 12-14. The claim language invokes immediacy: "as it flows over the weir" means the fluid must be in the reservoir when ("as") the fluid has passed

7

the weir. If the dielectric fluid "flows over the weir," traverses for some time, and then later ends up in a recovery reservoir, the claim is not met. GRC's construction gives meaning to that express claim language, while Midas removes it.

Third, Midas's rebuttal argument relies on a provisional application[2] that describes an embodiment it did not claim. More specifically, Midas relies on a provisional disclosure where fluid can flow over a weir, drain through various "U-Shaped tubes," and wind up in a "sump" that Midas contends is a recovery reservoir. Midas Br. at 17-18. As detailed in GRC's opening brief, the '457 patent distinguished that provisional embodiment and ultimately described and claimed something else:

> It will be recognized that, *in all of the embodiments described herein*, emphasis was placed on minimizing the total volume of the dielectric fluid circulating throughout each immersion module 10. *We submit that the key concept here* is to move the secondary fluid to the point of heat exchange with the primary fluid, rather than to move the primary fluid to the point of heat exchange with the secondary fluid. Thus, in our preferred embodiment, all of the essential components of the primary circulation facility 28 are tightly co-located with the tank 14 so as to form a highly-integrated module. Further, ***our placement of the reservoir 42 outside of (but immediately adjacent to) the tank 14*** *tends to reduce the total volume of the dielectric fluid (as opposed to the alternative arrangement we proposed in our First Provisional, wherein a recovery trough was disposed within the tank 14)*….

GRC. Br. at 13 (quoting '457 Patent at 8:47-62 (emphasis added)); *see also* Ex-10 at 32 (disclosing in the "First Provisional" the distinguished embodiment regarding a "sump" recovery reservoir); *MPHJ Tech Invs., LLC v. Ricoh Americas Corp.*, 847 F.3d 1363, 1366-69 (Fed. Cir. 2017) (determining that changes made between an applicant's provisional application and a later patent's specification inform a skilled artisan's understanding of the patent's claims).

Midas's responsive brief inexplicably relies on the first provisional's embodiment that was

---

[2] Midas references but did not file the provisional in its responsive brief. Nonetheless, GRC files the provisional herewith as Exhibit 10 to make the record complete.

8

later distinguished in the '457 patent's specification (as shown in the quote above). The difference between the two highlights the parties' dispute: the claims require a recovery reservoir that is placed immediately outside the overflow lip of the weir, whereas the provisional drained fluid that eventually flowed into a sump rather than "as [the fluid] flows over" the weir as claimed. Midas Br. at 17-18; GRC Br. at 12-15. Midas cannot regain this claim scope now after expressly distinguishing it in the specification.

Accordingly, the Court should construe this disputed phrase to mean "the dielectric fluid is received by the recovery reservoir as soon as the fluid flows over the weir."

D.  **"the tank and primary circulation facility comprise a highly-integrated module" (claim 2)**

| Term | GRC Construction | Midas Construction |
|---|---|---|
| "the tank and primary circulation facility comprise a highly-integrated module" (claim 2) | Indefinite | Plain meaning |

Midas's responsive brief includes two inapposite arguments regarding claim 2. The first is that "highly" is a commonly-used term in engineering. Midas Br. at 19. None of the examples are from the intrinsic evidence or even relevant to the disputed phrase. Midas instead suggests without citation that "many engineering examples" use "highly" as a modifier. *Id.* For the reasons set forth in GRC's opening brief, that is irrelevant. GRC Br. at 15-18. The intrinsic evidence must provide an objective baseline for determining when a module is "highly-integrated." Here, the evidence does not do so, a fact confirmed by Midas's silence in response to GRC's opening brief.

The second argument relies on a POSITA, who would allegedly find it obvious to consider various goals set forth in the '457 patent and determine therefrom that a circulation system should

be made as compact as possible. Midas Br. at 19-20. A POSITA's goals are not at issue—the issue is when the system is compact and otherwise integrated enough to qualify as "highly-integrated." Midas did not and cannot point to any objective criteria for evaluating when a module is "highly-integrated" because no such criteria was disclosed in the '457 patent. That renders claim 2 indefinite. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (finding a "term of degree fails to provide sufficient notice of its scope if it depends on the unpredictable vagaries of any one person's opinion") (internal quotation omitted).

## III.   CONCLUSION

For the foregoing reasons, GRC respectfully requests that the Court adopt its proposed constructions and find claim 2 indefinite.

Dated: December 30, 2024

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Ashley N. Moore*
   Ashley N. Moore
   Peter S. Wahby
   Sarah-Michelle Stearns
   Ashley.Moore@gtlaw.com
   Peter.Wahby@gtlaw.com
   SarahMichelle.Stearns@gtlaw.com
   2200 Ross Avenue, Suite 5200
   Dallas, TX 75201

**ATTORNEYS FOR DEFENDANT
GREEN REVOLUTION COOLING, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who have appeared electronically in this case are being served with this document on December 30, 2024 by way of the primary email address that said counsel supplied to the Court's CM/ECF system.

By: */s/ Ashley N. Moore*
Ashley N. Moore