# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **Midas Green Technologies, LLC**, | |
| Plaintiff, | Civil Action No. 6:24-cv-00166-ADA |
| - vs. - | **Jury Trial Demanded** |
| **Green Revolution Cooling, Inc.** | |
| Defendant | |

## MIDAS GREEN TECHNOLOGIES, LLC'S SUR-REPLY TO GREEN REVOLUTION COOLING, INC.'S REPLY CLAIM CONSTRUCTION BRIEF

## Table of Contents

I.    INTRODUCTION ...................................................................................................1

II.    DISPUTED TERMS AND PHRASES...................................................................1

    A.   **"Weir" (Claims 1 and 6)**...............................................................................1

    B.   **"A weir integrated horizontally into the long wall of the tank" (Claims 1 & 6)**.....................4

    C.   **"A dielectric fluid recovery reservoir…." (Claims 1 & 6)**.........................................6

    D.   **"The tank and primary circulation facility comprise a highly-integrated module (claim 2)**...9

III.   CONCLUSION.......................................................................................................10

# Cases

*Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353 (Fed. Cir. 2017) ............................................... 3

*Conversant Intellectual Property Management v. Xilinx, Inc.*, 2015 U.S. Dist. LEXIS 2374, *7 . 1

*DDR Holdings, LLC v. Priceline.com LLC*, 2024 U.S. App. LEXIS 31009, *16 (Fed. Cir. Dec. 9, 2024).................................................................................................................................................. 3

*Egenera, Inc. v. Cisco Systems*, 972 F.3d 1367, 1379 (Fed. Cir. 2020) ........................................ 1

*Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) ........................................................ 1

*Paltalk Holdings, Inc. v. Microsoft Corporation,* Case No. 2:06-CV-367, 2008 WL 4830571, at *13-14 (E.D. Tex. July 29, 2008)...................................................................................................... 2

*Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005)............... 2

*SanDisk Corporation v. Memorex Products, Inc.*, 415 F.3d 1278, 1291 (Fed. Cir. 2005)............. 2

*SkyHawke Technologies, LLC v. Deca International Corporation*, 828 F.3d 1373, 1376 (Fed. Cir. 2016) .......................................................................................................................................... 3

## I.   INTRODUCTION

GRC used its Reply Claim Construction Brief to repeatedly accuse Midas of "reading terms out of the claim," which is odd as they make this accusation for terms where Midas proposes to apply plain meaning to the full unadulterated and verbatim text language.  As a result, Midas is incapable of reading anything out of these "plain meaning" claims. GRC is upset because Midas reasonably interprets these plain language terms and has strong infringement claims against GRC's products. With such clear infringement under plain meaning, GRC is forced to propose unsupported and confusing constructions that it feels can deliver a better non-infringement position.

After carefully reviewing GRC's Reply, Midas is confident its positions, reasoning, and arguments in its Opposition are strong, which this Court should adopt. Midas now submits this Sur-Reply to underscore the flaws in GRC's positions raised in its Reply.

## II.   DISPUTED TERMS AND PHRASES

The Parties agree that all claim limitations and terms in Claims 1 and 6 should be given their plain and ordinary meaning, except for "plenum" (which has an agreed construction) and the three terms discussed below. Further, GRC asserts that Claim 2 is indefinite, which Midas addresses in Section "D" below.

### A.  "Weir" (Claims 1 and 6)

| Term Context | Midas Proposal | GRC Proposal |
|---|---|---|
| "A dielectric fluid recovery reservoir positioned vertically beneath the overflow lip of the **weir** and adapted to receive the dielectric fluid over the weir." | "an overflow structure or barrier that a liquid flows over" | "an overflow structure or barrier that determines the level of liquid" |

1

GRC asserts that Midas should be judicially estopped from asserting an alternative definition for "weir." The relevant factors for judicial estoppel in the Fifth Circuit are: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Conversant Intellectual Property Management v. Xilinx, Inc.*, 2015 U.S. Dist. LEXIS 2374, *7; *citing Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012). To be "clearly inconsistent," positions must be "mutually exclusive" and "directly inconsistent." *Egenera, Inc. v. Cisco Systems*, 972 F.3d 1367, 1379 (Fed. Cir. 2020).

GRC has not met its burden of establishing element one of judicial estoppel, requiring "a legal position which is plainly inconsistent with a prior position." Midas previously stipulated to the claim construction proposed by Immersion Systems. However, this stipulation was tailored for that case, and Midas did not intend for the stipulation to bind Midas in future litigations. In such circumstances, courts have refused to bind the parties to prior stipulated claim constructions. *Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005).

GRC acknowledges there is no dispute that a 'weir' is "an overflow structure or barrier." This dispute is focused solely on whether a 'weir' should be defined as a barrier that "liquid flows over" or a barrier that "determines the level of the liquid." The Midas proposal is fully supported in the claim language itself as well as the specification and drawings. The prior stipulation, which GRC proposes is a narrower limitation that focuses on one of the effects a 'weir' may have. Thus, there can be no inconsistency between the two proposals. *See SanDisk Corporation v. Memorex Products, Inc.*, 415 F.3d 1278, 1291 (Fed. Cir. 2005) (rejecting judicial estoppel arguments where the patentee's earlier claim construction position related to the narrower term and the subsequent

2

position was on a broader term). These differences are not material, and therefore not "plainly inconsistent." For that reason, judicial estoppel does not apply.

An instructive case is *Paltalk Holdings, Inc. v. Microsoft Corporation,* Case No. 2:06-CV-367, 2008 WL 4830571, at *13-14 (E.D. Tex. July 29, 2008). In *Paltalk*, the parties disputed the claim term "aggregated;" a term previously construed in previous litigation. *Paltalk Holdings*, supra, *30-35. The Court ultimately found judicial estoppel did not apply "as long as the positions advanced by *PalTalk* are not "clearly inconsistent" with those of *HearMe* in the previous litigation. *Id. at* *14, *35. For the same reasoning, GRC's argument should be denied. Midas' position is not "plainly inconsistent." As the Midas proposed claim term is consistent with the definition of the GRC claim term, Midas respectfully requests the Court adopt Midas' proposal.

GRC makes the argument that Midas's position is that Midas' claim term be defined as "sets the level of the fluid" in an IPR filed by Immersion Systems. This IPR was never instituted.

GRC relies on *Aylus Networks, Inc. v. Apple Inc*., 856 F.3d 1353 (Fed. Cir. 2017), to argue all statements made during an IPR are part of the intrinsic record. *Aylus*, however, does not stand for that proposition. Instead, the *Aylus* court found "that statements made by a patent owner during an IPR proceeding can be considered during claim construction and relied upon to support a finding of prosecution disclaimer." *Id.*  Midas has not disclaimed any part of its patented invention, and GRC does not argue otherwise. Thus, the *Aylus* standard allowing for IPR disclaimers to become part of the intrinsic record does not apply. Further, courts have found that even when the PTAB adopts claim constructions and issues final rulings, litigants are not collaterally estopped from taking different claim construction positions in litigation. For example, "[b]ecause the [PTAB] applies the broadest reasonable construction of the claims while the district courts apply a different standard of claim construction as explored in *Phillips*," a party is not collaterally

estopped in district court proceedings by the Board's constructions during IPR." *DDR Holdings, LLC v. Priceline.com LLC*, 2024 U.S. App. LEXIS 31009, *16 (Fed. Cir. Dec. 9, 2024); *citing SkyHawke Technologies, LLC v. Deca International Corporation*, 828 F.3d 1373, 1376 (Fed. Cir. 2016). Thus, there is no basis to assert that Midas' positions proposed to the PTAB (which were never instituted) IPR are part of the patent's intrinsic record. Further, even if the PTAB had instituted and issued a final ruling, Midas' claim construction would not be collaterally estopped. This analysis also holds true with judicial estoppel.

In sum, GRC has not established that judicial estoppel should apply to bind Midas to its previously stipulated claim construction of 'weir.' Based on this, Midas respectfully requests the Court adopt its claim construction.

**B. "A weir integrated horizontally into the long wall of the tank" (Claims 1 & 6)**

| Term | Midas Proposal | GRC Proposal |
|---|---|---|
| "a weir, integrated horizontally into the long wall of the tank" | Plain meaning | "a weir having a horizontal (as opposed to vertical) orientation that is integrated into the long wall of the tank" |

This term, as set out in Claim 1, is simple, straightforward, and easy for one skilled in the art to understand and apply to an accused device. Midas proposes using plain meaning for each and every word of this claim term as presented. Despite GRC's repeated mantra that Midas is reading words out of the claim, Midas is proposing using each and every word as they would be understood by a POSITA. As this reasonable and clear plain meaning does not give GRC the noninfringement position they need, GRC proposes a complicated construction far beyond anything contemplated by the '457 Patent. For example, GRC brings in a whole new concept of "orifice orientation" that has never been a part of the '457 Patent or its claims. In particular, GRC concocts a completely new and unsupported limitation where it finds that:

4

*The word "horizontally" in the disputed phrase refers to the orientation of the orifice through which liquid leaves the tank.*    (Reply, pg. 6).

There is NOTHING in the claims or the specification that supports this construction. The "orientation of the orifice" is a phrase that GRC fabricates to build a non-infringement position. GRC's construction adds a never-before-considered limitation that is unsupported and adds confusion to the simple, plain language of the claim term.

It is noteworthy that while GRC heavily emphasizes its argument regarding the "orientation of the orifice," it has not explicitly included any mention of an "orifice" in its claim proposal. GRC appears to be aiming to incorporate just "orientation" into the claim, allowing its expert to introduce a range of restrictions related to "the orifice." This is yet another example of GRC stretching claim constructions to establish new non-infringement arguments.

Seen another way, the term, "a weir integrated horizontally into the long wall" is simple and understandable.  Instead, GRC wants the narrower "weir having a horizontal orientation that is integrated into the long wall."  This rejiggering of the claim language adds an unsupported and unnecessary limitation that narrowly defines what the 'weir' itself can be (it is unclear what it means for a 'weir' to have a "horizontal orientation"). And if we can figure out how a 'weir' can independently have a "horizontal orientation," then the GRC proposal has that 'weir' integrated into the long wall.

More simply stated, Midas proposes "a weir integrated horizontally," and GRC proposes "a weir having a horizontal orientation" that is then integrated into the long wall. GRC's proposal does not help understand the claim term but adds a level of confusion and ambiguity, and its addition of the "orientation" concept can be found nowhere in the '457 Patent claims.

GRC is also clearly trying to change the well-understood meaning of "integrated" and "horizontal."  As for "integrated," GRC seems to be assuming that it means the 'weir' and 'long

5

wall' must be made of one contiguous piece of metal. This is a terrible misunderstanding of "integrated," which has a specific understanding of the art.  For example, Oxford defines integrated as "with various parts or aspects linked or coordinated." But GRC takes its very narrow view of "integrated" and performs an infringement analysis while asserting that merely bolting the weir (grey boxes) to the long wall is not an "integration." First, GRC is wrong, as bolting, welding, etc. can be used to integrate separate parts, and second, GRC's infringement views are not appropriate in this claim construction discussion.

As for "horizontal" and specifically their example of "Option A" not "Option B," the '457 Patent says nothing about an orifice having a horizontal orientation. When discussing the "weir," the '457 Patent never mentions "orifice" or "orientation." These are limitations that GRC simply fabricates. Further, the "Option A" and "Option B" weirs that GRC illustrates in its Reply are both weirs that are integrated horizontally into the long wall[1].  It is important to note that in the "Option A" and "Option B" diagrams, GRC points to the respective weirs and refers to them as "horizontally-oriented orifice" and "vertically-oriented orifice." These are terms that cannot be found in the '457 Patent, the claims, or even in GRC's proposed construction.



**C. "A dielectric fluid recovery reservoir…." (Claims 1 & 6)**

---

[1] Both weirs appear to be integrated horizontally into the long wall of the tank.  The slant of Option B is believed to be a drafting error, and the intention was to have the top of the weir parallel to the top of the tank (horizontal).

| Term | Midas Proposal | GRC Proposal |
|---|---|---|
| "A dielectric fluid recovery reservoir positioned vertically beneath the overflow lip of the weir and adapted to receive the dielectric fluid as it flows over the weir" | Plain meaning | the dielectric fluid is received by the recovery reservoir as soon as the fluid flows over the weir |

GRC accuses Midas of not giving proper weight to its ellipsis in the claim term in its table of the opening brief. So above, Midas has replaced GRC's ellipses with the full text of this limitation. From the table (as presented by GRC), it is still removing substantial structure with its proposal. GRC still seems to be playing "hide the ball" with what aspect of this term they are interpreting. From its discussion on pg. 7 of its Reply, it seems GRC is proposing interpreting "to receive the dielectric fluid as it flows over the weir" to mean "the dielectric fluid is received by the recovery reservoir as soon as the fluid flows over the weir". It would have been helpful if GRC conformed the table to their intentions.

Midas proposes that "to receive the dielectric fluid as it flows over the weir" is well understood by one skilled in the art, and any changes add undo complexity or confusion. GRC proposes to replace this simple limitation with "the dielectric fluid is received by the recovery reservoir as soon as the fluid flows over the weir." There are many problems with GRC's proposal. GRC takes the position that the phrase "as it flows over" requires absolute immediacy. It even states "If the dielectric fluid "flows over the weir", traverses for some time, and then later ends up in a recovery reservoir, the claim is not met." This is fundamentally incorrect.

First "as" does not equate to "immediately." For example, the first definition at

dictionary.com for "as" is "*used to indicate that something happens during the time when something is taking place: "Frank watched him as he ambled through the crowd" · "as she grew older, she kept more to herself."*"

In this way, the use of "as" permits a passage of time while events unfold. This is consistent with the descriptions and figures of the '457 Patent. For example, the '457 Patent describes the need to "design the reservoir [42] such that the average height of dielectric fluid above the recovery ports [44] develops sufficient hydrostatic head to meet the requirements of the pumps [48], while also tending to minimize the likelihood of breaking suction during normal operation." (Col. 4, Lines 44 - 49). Due to the highly integrated primary circulation facility requirement of the system, it may not be possible to meet the requirements of the pump with a reservoir that is located immediately below the weir and the full length of the weir. A POSITA would recognize that it may only be possible to meet this requirement by collecting the dielectric fluid in a reservoir that is of different dimensions than those of the weir. Thus, it takes time for the fluid to overflow the lip of the weir, move through the intervening structure, and be received into the reservoir. It is not "as soon as", because fluid systems take time to respond and settle, and as described in the '457 Patent, it is critical to meet the hydrostatic requirements of the pumps [48] of the immersion cooling system.

The '457 Patent does teach the reservoir [42] be immediately adjacent to the tank [14] but it does not teach that the reservoir must extend for the length of the weir. (Col 8, Lines 54 to 60). However, this teaching is with regards "minimizing the total volume of the dielectric fluid" and conserving valuable floor space in a typical data center installation." (See Col 8 line 47 to Col 9 line 2). A POSITA would understand that meeting

8

the requirements of the pumps [48] far outweighs the need to use floor space efficiently or reduce the amount of coolant in a system.

Finally, GRC mischaracterizes the impact of the First Midas Provisional. In the First Provisional (which was fully incorporated by reference in the '457 Patent), has an immersion cooling tank that flows fluid from the bottom of the tank, and fluid overflows a lip and falls into a U-shaped trough, which slopes and moves the fluid into a sump reservoir. In the preferred embodiments in the '457 Patent, the reservoir was set closer to the tank, to reduce the amount of fluid used. Even then, the reservoir is described as being "adjacent," as opposed to the "alternate" arrangement that has an intervening trough. Nothing in the '457 Patent disclaims troughs or intervening structures, so there is no subject matter for Midas to regain. In fact, the '457 Patent expressly calls the trough arrangement of First Provisional as "an alternative arrangement."

Once again, GRC is trying to invent a non-infringement position by wrongly asserting that Midas disclaimed EVERY possible intervening structure between the overflow lip and the reservoir.

### D. "The tank and primary circulation facility comprise a highly-integrated module (claim 2)

GRC barely tries to argue this Section, so there is little for Midas to rebut that is not repetitive of its positions in the Responsive Brief. GRC does not like that Midas used extrinsic evidence to show that one skilled in the art would know what it means to be "highly integrated," but extrinsic evidence is often used by a POSITA and can help develop understanding. So, Midas' use of extrinsic evidence is proper and helpful. GRC also wrongly asserts that the '457 Patent has no objective criteria for understanding what it means to be highly integrated. However, the '457 Patent tells a POSITA to look to the arrangement and positioning of essential components of the

primary circulation facility, which are well-defined components.  If those are tightly co-locating with the tank, then it is a highly integrated system.

> *Thus, in our preferred embodiment , all of the essential components of the primary circulation facility 28 are tightly co - located with the tank 14 so as to form a highly - integrated module. (8:54-57)*



The '457 Patent also has Fig. 4, which shows an example of the essential components of the primary circulation facility being tightly co-located with the tank. The '457 Patent gives sufficient guidance to a POSITA to know what it means to have a highly integrated immersion cooling system.  Claim 2 is not indefinite.

## III.    CONCLUSION

For all the reasons set forth in this Sur-Reply as well as the Midas Responsive Claim Construction Brief, this Court should adopt the following claim constructions:

| Disputed Term | Proper Construction |
| --- | --- |
| Weir (claims 1 & 6) | an overflow structure or barrier that a liquid flows over |
| "a weir, integrated horizontally into the long wall of the tank" (claims 1 & 6) | Plain meaning |
| "A dielectric fluid recovery reservoir positioned vertically beneath the overflow lip of the weir and adapted to receive the dielectric fluid as it flows over the weir" (claims 1 & 6) | Plain meaning |
| highly integrated | Not indefinite |

DATED: January 10, 2025                    Respectfully submitted,

                                           */s/ Joseph E. Thomas*
                                           Joseph E. Thomas *(admitted p.h.v)*
                                           William J.  Kolegraff *(admitted p.h.v)*
                                           Grant J. Thomas *(admitted p.h.v)*
                                           THOMAS WHITELAW & KOLEGRAFF LLP
                                           18101 Von Karman Ave., Suite 230
                                           Irvine, California 92612
                                           Telephone: (949) 679-6400
                                           Fax: (949) 679-6405
                                           jthomas@twtlaw.com
                                           bkolegraff@twtlaw.com
                                           gthomas@twtlaw.com


                                           Michael C. Smith
                                           Texas Bar No. 18650410
                                           michael.smith@solidcounsel.com
                                           Scheef & Stone, LLP
                                           113 E. Austin Street
                                           Marshall, TX 75670
                                           (903) 938-8900

                                           Attorneys for Plaintiff Midas Green Technologies LLC


## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2025, a copy of this document was served via the

United States District Court CM/ECF system on all parties or persons requiring notice by way of

the primary email address that counsel supplied to the Court's CM/ECF system.


                          By   */s/ Joseph E. Thomas*
                               Joseph E. Thomas